IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMBROSE MORAGA,

        Plaintiff,

v.                                                                  CIV 02-1407 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.


# MEMORANDUM OPINION AND ORDER

Plaintiff Ambrose Moraga has a long history with the Administration.  He previously received Title II disability benefits for a closed period 1988 to 1994.  *See Administrative Record* ("*Record*") at 15; *Moraga v. HHS,* CIV 97-890 BB/LCS (*Doc. 15*); *Moraga v. HHS,* CIV 99-1340 JP/KBM (*Doc. 11*).  Thereafter he filed another claim for Title II disability benefits, but that matter has not been appealed to this court.  *See Record* at 15.

In September 2000 he filed a claim for Supplemental Security Income Benefits under Title XVI and, therefore, must establish a disability on or after that date.  *Id.* at 16.  ALJ William F. Nail, Jr. found that Plaintiff has the residual functional capacity for light work and, as a younger individual with a high school education, was not disabled at Step 5 under Medical-Vocational Rule 202.20.  *See id.* at 19-20.  The Appeals Council declined review, thereby rendering the ALJ's decision final.  *Id.* at 5-6.

1

This matter is before the Court on Plaintiff's Motion to Reverse or Remand, where he raises four claims. *See Docs. 11, 12.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. I find that Plaintiff's motion should be granted in part, and the matter remanded to the Commissioner for further proceedings.

## I.  Standard Of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

## II.  Factual Background

### A.  According To Plaintiff And His Sister, He Is Bedridden And Totally Disabled

Plaintiff contends that he suffers from back pain that renders him unable to stand, walk, bend, twist or work. *See Record* at 85, 98-99, 116-18. As he testified at the hearing, his pain has precluded him from engaging in any activities other than lying on the couch all day watching

television.[1]  Plaintiff's sister also testified that Plaintiff is essentially physically bedridden from

pain, and therefore she takes care of everything for him.  *See id.* at 57-61.

### B.  Medical Reports And Opinions Relating to Plaintiff's Complaints of Pain

Administrative Law Judge ("ALJ") Nail reviewed Plaintiff's medical records and then

observed that

> Mr. Moraga has alleged long-standing mechanical back pain,
> exacerbated as a result of an injury occurring in December 1988.
> X-rays done in December 1997 disclosed minimal spondylolisthesis
> at the L5 level.  X-rays done in February 1998 were interpreted as
> grade 1 spondylolysis and spondylolisthesis at the L-5 level (Exhibit
> B1F).  A Presbyterian Healthcare Services report from October
> 1998 characterized Mr. Moraga's reports of back pain to involve
> exaggerated response (Exhibit B3F19).  In January 1999, Mr.
> Moraga's back pain was again characterized as involving severe
> magnification of symptoms (Exhibit B3F15).  In March 1999, his
> reported pain level was again described as disproportionate.
> (Exhibit B3F14).

*Record* at 17.  The notations about exaggeration are supported by the record.  *See id.* at 125,

142, 143, 147, 151.

However, Plaintiff's treating physician, family practitioner Dr. Roland Sanchez, saw

Plaintiff in August 2000 and gave the opinion that Plaintiff was "totally disabled due to back and

knee problems and would be so for the next five years."  *Id.* at 17.  There are no records from this

doctor prior to the August 2000 visit, even though the Administration requested records from

---

[1]  *See Record* at 31-32 (has a four-year-old child); *id.* at 34 (uses a cane, but not all the time); *id.* at 35-36 (since 1988, only time worked was for three weeks in 1993); *id.* at 40-41 (does not drive – his license was suspended); *id.* at 42 (does not engage in social activities other than going to visit friends and to dinner with his girlfriend; does not read); *id.* at 43 (has no hobbies and does not help around the house but will occasionally go to the store); *id.* at 44 ("Laying down. . . . Watch TV. . . That's pretty much about it."), *id.* at 45 (can take care of hygiene and dress himself); *id.* at 46 (can walk only one or two blocks and a gallon of milk or a six-pack of cola is too heavy to lift); *id.* at 46-47 (cannot kneel, bend over or squat, has difficulty with stairs, and cannot open or close his hands).

January 1998 forward.  *See id.* at 173.

ALJ Nail did not detail Dr. Sanchez' record of the August visit.  That record merely states that Plaintiff complained of

> lower back pain (chronic) needs letter for disability. 1/y/0  Hx of B
> acc. [illegible single word].  O-[illegible two words].  Grade 1
> spondylolthesis.  P- ref to spine [illegible single word].

*Id.* at 179.  Dr. Sanchez referred Plaintiff to a spine clinic, *id.* at 178, and wrote Plaintiff the requested letter.  *See id.* at 177-78.  His "to whom it may concern" letter provides:

> Mr. Moraga is a patient in our clinic.  Mr. Moraga suffers pain and
> develops fluid on the back of his knees if he stands or walks for
> even sort periods of time.
>
> Mr. Moraga became totally disabled in 1988 due to a work-related
> accident in 1988.
>
> He needs to see an orthopedic surgeon for pain management and
> surgery.  He has Grade I spondylosis (sic).  He also suffers migraine
> headaches.
>
> He is totally disabled and will remain so for the next five years.
>
> If you have any questions, please call me at . . . .

*Id.* at 177.

The spine specialist to whom Plaintiff was referred and who examined Plaintiff in August 2000 was Dr. Richard N. Castillo.  He prepared a report for Dr. Sanchez.  *See id.* at 126  Dr. Castillo's report incorrectly noted Plaintiff's age,[2] but otherwise provided that his physical examination revealed Plaintiff is a:

---

[2]  Born on July 7, 1963, Plaintiff would have been thirty-seven, not forty-seven, years of age as of the August 2000 examination.  Plaintiff was thirty-eight when ALJ Nail issued his decision.  *See Record* at 19, 78, 126, 127.

4

healthy-appearing male.  His gait is normal.  Heel walk, toe walk and squat are normal without any evidence of gross weakness.  He carries his weight equally between his right and left lower extremities.  His Romberg and finger to nose are negative.  His posture is normal without any evidence of increased thoracic kyphosis, lumbar lordosis or scoliosis.  He is unable to go through a range of motion of his lumbar spine due to *perceived pain.*  Deep tendon reflexes are 1+ and symmetric at the knees and ankles.  His toes are downgoing with no evidence of clonus.  His leg lengths are equal.  There is no gross atrophy from the right to left side.  Muscle strength testing is grossly grade 5/5 in all motor groups in both lower extremities.  His sitting sciatic stretch tests are negative.  His supine sciatic stretch tests, however, are positive bilaterally at less than 30 degrees which is *nonphysiologic.*  His sensation is intact to pin and light touch throughout all neural dermatomes in body lower extremities.  His Waddell's are essentially 4/5 and *consistent of tenderness, simulation, distraction and over reaction.*

*Id.* at 127 (emphasis added)

Dr. Castillo took x-rays, which "do show a grade I L5 spondylolisthesis [with] some motion at that level but no evidence of gross instability," and assessed Plaintiff with "[c]hronic mechanical low back pain" and "[*m*]*arked symptom magnification*." *Id.* (emphasis added).  He told Plaintiff that "at least from an orthopedic standpoint . .. I would consider him to be stable" and that he did not believe "any type of surgical intervention is indicated for his problem, either now or in the foreseeable future." *Id.* Dr. Castillo further explained that he did not treat "chronic pain management [so] [i]f that's what he needs, then perhaps a physiatry[3] evaluation might be useful" and that he does not "make disability evaluations, either, and . . . could not help him in that regard." *Id.* (emphasis added).

---

[3] Physiatry "is a branch of medicine that specializes in diagnosis, treatment and management of disease primarily using 'physical' means (such as physical therapy and medications).  Essentially, physiatrists specialize in a wide variety of conservative treatments   for the musculoskeletal system (the muscles and bones) and do not perform surgery." *See www.spinehealth.com.*

Apparently upon reviewing Dr. Castillo's report, Dr. Sanchez referred Plaintiff for "pain management." *Id.* at 176.  At that visit, Dr. Sanchez also provided a "statement of ability to do work related activities" form for Plaintiff.  In it, Dr. Sanchez was of the opinion that Plaintiff could only lift less than ten pounds, stand or walk less than two hours in an eight-hour day, and must alternate siting and standing, and had limited ability to push or pull with his lower and upper extremities. *Id.* at 152.  He also indicated that Plaintiff has "other impairment-related physical limitations," noting that he is "unable to bend, straighten, or twist." *Id.*  The next and only other time Dr. Sanchez saw Plaintiff, he rescheduled him for "pain management for 11/6/00." *Id.* at 175.

When Plaintiff saw Dr. Brian Delahoussaye on November 6, 2000, that examination revealed that Plaintiff had "full range of motion" in his upper and lower extremities but that his hamstring ***muscles were tight*** and his "quadratus lumborum ***muscles [were] diffusely tender.***" *Id.* at 171 (emphasis added); *see also id.* at 170-72.  Dr. Delahoussaye noted that Plaintiff appeared "to be ***deconditioned*** and has limitation in spinal motions." *Id.* at 172 (emphasis added).  He recommended that Plaintiff try "a series of deep trigger point injections" on those tight muscles "to try and reduce the restriction in this area." *Id.*  Plaintiff, however, has a fear of injections, so he declined the recommended treatment.  Dr. Delahoussaye "spent considerable time addressing the potential treatments that may help" and Plaintiff was to return back "if he is willing to undergo treatment." *Id.*  Plaintiff was a no show at his next appointment. *Id.* at 168.

In late September 2000, Plaintiff's attorney referred him to Ken. L. Williams, who is a "vocational consultant" and "Licensed Professional Clinical Mental Health Counselor." *See id.* at 158; *see also* NM ADC 8.310.4.  Mr. William's reports of Plaintiff's physical condition and

6

limitations are, as ALJ Nail noted, based solely on Plaintiff's self-reports and Dr. Sanchez's opinions.  *See Record* at 155-56, 158.

### C.  *Evidence Of Depression*

A medical record from February 1998 mentioned that Plaintiff "needs recertification for disability of back pain x 10 yr[,] ***feels depressed re: chronic back pain***, past certification lapsed." *Id.* at 148 (emphasis added).  Other than that single notation, none of the records of medical providers before ALJ Nail showed complaints of depression, note any symptoms of depression, indicate suspected depression, refer Plaintiff to a specialist or prescribe medication for depression. *See id.* at 125–51, 153, 168-79.  Likewise, there were no complaints of depression ten years earlier, when Plaintiff was undergoing six months of therapy after he injured his back.  *Id.* at 182-85.

Only Mr. Williams' October 2000 vocational disability evaluation appears to suggest that Moraga was suffering from a severe depression.  At page two of his evaluation, Mr. Williams stated:

> Mr. Moraga presented a flat affect during the clinical interview and testing.  He was slightly unkempt and unshaven.  He is a slim individual whose posture was rigid and somewhat slumped.  Facial expressions suggested anxiety and apprehension, depression, and sadness.   There was decreased variability of expression and general body movements were somewhat slowed.  His affect was blunted and unvarying.  No deficits in perception were noted, such as hallucinations or delusions.  He reports a poor appetite and has great difficulty sleeping because of chronic pain.  His girlfriend says he's worthless, and he feels the same with occasional thoughts of self-destruction.  The future seems gloomy and he weeps about once a week, especially when left at home alone.  The (sic) obtained a score of 41 on the Beck Depression Inventory-II, suggesting he is suffering from a severe state of depression.

*Id.* at 156.

After ALJ Nail issued his decision, Dr. Sanchez provided another letter which states that he "concur[s]" with Mr. Williams' findings," *id.* at 186, and provided another identical statement of physical limitations, *id.* at 187.  Later, a Dr. George Baca, whom counsel describes as a "treating physician," submitted an RFC form for mental limitations that reports primarily "marked" limitations.  *See id.* at 189-92.  The Appeals Council "considered," but did not discuss this submission.  *Id.* at 5, 7.

## III.  Analysis

### A.  *Physical Residual Functional Capacity And Credibility Findings*

As detailed above, just prior and after Plaintiff filed his 2000 application, no medical evidence showed that his back condition resulted in any limitations whatsoever.  Yet, as ALJ Nail noted,  Plaintiff was "contending that he is almost completely incapacitated and bedridden," *id.* at 18; Dr. Sanchez was of the opinion that Plaintiff was "totally disabled," *id.* at 17; and the vocational consultant's report was based entirely on Plaintiff's self-report and Dr. Sanchez's opinions, *id.* at 155-56, 158.

ALJ Nail discussed that he gave more weight to the reports and/or opinions of Dr. Castillo and Dr. Delahoussey because they are specialists and examined Plaintiff.  *Id.* at 18.  He gave very little weight to Dr. Sanchez's opinions, finding it conclusory and unsupported by the medical evidence, or to Mr. William's opinion, because he is not a physician and the opinion about Plaintiff's limitations was simply based on Plaintiff's self-report and Dr. Sanchez's opinion .  *See id.* at 18.  Aside from reviewing the medical evidence which showed Plaintiff's complaints of pain were exaggerated, ALJ Nail specifically found Plaintiff's asserted physical limitations based on

pain not credible because they are inconsistent with the objective medical evidence and because he

"has consistently resisted treatment of any sort (Exhibits B8F5, B10F3, B7F3, B7F6, B3F15)."

*Id.*

Even so, ALJ Nail did not entirely discount Plaintiff's testimony such that he found no

physical limitations on Plaintiff's ability to work.  Rather, he found that:

> The state agency medical consultants reviewed Mr. Moraga's
> records and assessed him a capable of medium work, noting that
> Mr. Moraga's allegations of severe functional limitations were not
> supported by the evidence.  I concur.  However, I do consider that
> Mr. Moraga's back disorder imposes some exertional limitations
> and that the state agency physician's assessment may be slightly
> optimistic.  In any event, the evidence fails to support the presence
> of a condition which would reasonably limit Mr. Moraga to less
> than the exertional abilities required for the performance of at least
> "light" work.  His upper extremities are intact.  His lower
> extremities are intact.  His gain and posture is normal.  He has no
> manipulative deficits.  He has some difficulties bending wheich
> reasonabley imposes minor lifting limitations, but not to the extent
> Mr. Moraga has alleged.  Accordingly, the undersigned finds the
> claimant retains a residual functional capacity for the performance
> of "light" work.

*Record* at 18-19.

In his first claim, Plaintiff asserts that ALJ Nail failed to apply the correct legal standards

set out in Social Security Ruling 96-3p, Social Security Ruling 95-5p, and *Luna v. Bowen,* 834

F.2d 161 (10th Cir. 1987).  His specific argument relies on the following:  x-rays from 1998 show

spondylolistheis and spondylolysis; subsequent medical reports characterize his pain as "chronic;"

he walks with a limp and cane; his sister testified that he is essentially entirely incapacitated; and a

vocational expert opined that Plaintiff's pain precluded him from working. Plaintiff asserts that

given that evidence, the ALJ should have credited his assertions of total disabling pain.  Also,

Plaintiff argues that the ALJ should have given controlling weight to a treating physician's opinion that Plaintiff is unable to engage in even sedentary work, thereby failing to follow Social Security Ruling 96-8p or Social Security Ruling 96-2p. *See Doc. 12* at 6-10, 15-18. I disagree on both counts.

While the opinion does not specifically state that ALJ Nail found (1) Plaintiff to have a medical condition, (2) for which there is a loose nexus between the impairment and subjective complaints of pain, it is apparent that he implicitly so found. He considered whether Plaintiff's asserted pain "is in fact disabling," which is the third and final step under *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). At that step credibility comes into play and the ALJ decides whether "he believes the claimant's assertions of severe pain." *Id.* at 163. The formalistic approach Plaintiff is advocating is not required. *E.g., Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000).

Also contrary to Plaintiff's argument, ALJ Nail applied the correct legal standard in rejecting Dr. Sanchez's opinion. Dr. Sanchez saw Plaintiff three times and on each occasion referred him to someone else for treatment. Although it is unlikely that Dr. Sanchez qualifies as a "treating physician," *see Doyal v. Barnhart,* 331 F.3d 758, 762-63 (10th Cir. 2003), his ultimate opinion on disability is not dispositive, *e.g., White v. Barnhart,* 287 F.3d 903, 907 (10th Cir. 2001), and an ALJ need not give controlling weight to findings on limitations that are conclusory and unsupported by objective medical evidence, *e.g., id.* at 908. As illustrated above, Dr. Sanchez's bare opinion was not supported and hence, ALJ Nail's decision to give it little weight is supported by substantial evidence.

It is well-established that "a claimant's subjective complaint of pain is by itself insufficient

to establish disability" and "medical records must be consistent with the nonmedical testimony as to the severity of the pain." *Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990) (internal quotation and citation omitted). Because "[e]xaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court, we generally treat credibility determinations made by an ALJ as binding upon review." *Id.* (internal quotation and citation omitted).

After reviewing the medical evidence in detail, ALJ Nail identified two reasons why he discredited Plaintiff's assertions – lack of medical evidence and consistent resistance to treatment of any sort. Thus, this case does not present the situation where an ALJ fails to link a credibility finding to substantial evidence and instead just issues a "conclusion in the guise of findings." *E.g., Malakowsky v. Barnhart,* 66 Fed. Appx. 756, 758 (10th Cir. 2003) (and cases cited therein).

ALJ Nail's conclusion that Plaintiff resisted "any sort" of treatment is overstated. True, Plaintiff did not follow through with physical therapy and conditioning in 2000, but he did elect to take prescribed drugs periodically according the medical records from Presbyterian. *See Record* at 130-150 (current medications sections indicate Vicoden and once in 2000 he was prescribed Hydrocodone and once prescribed Davrocet). Nevertheless, the utter lack of any corroborating objective medical evidence for total disabling pain supports (and is alone sufficient to support) the ALJ's credibility finding in this particular case. Not only do the medical records not corroborate Plaintiff's assertions, they affirmatively state that his claims are exaggerated. Where, as here, a claimant complains of disabling pain but objective evidence does not support that subjective complain and instead contains evidence to support the finding that the complaints are exaggerated, the ALJ's decision is supported by substantial evidence. *See Talley,* 908 F.2d at

587; *see also Nieto v. Heckler,* 750 F.2d 59, 61 (10th Cir. 1984) (medical findings include "an evaluation of the patient's medical history and the physician's observations of the patient, and necessarily involves an evaluation of the credibility of the patient's subjective complaints of pain").

Lastly, the Administration "may also use evidence from other sources" such as "siblings," 20 C.F.R. § 404.1513(d)(4), and Social Security Ruling 95-5p provides that a decision must contain a thorough discussion of all evidence, medical or "other evidence" concerning pain. Plaintiff argues that a Ninth Circuit decision, *Smith v. Bowen,* 849 F.2d 1222 (9th Cir. 1988), holds that such evidence cannot be disregarded.

An unpublished Tenth Circuit decision holds the opposite:

> while information from family and friends may help the Commissioner understand how a claimant's impairments affect the ability to work, 20 C.F.R. 416.913(e)(2), this information is not binding on the Commissioner.  No error occurred because the ALJ did not discuss the letters received from Ms. Leeper's family and friends.

*Leeper v. Chater,* 81 F.3d 172 (10th Cir. 1996) (unpublished).  Another Tenth Circuit decision declined a "claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility," but there "the written decision reflect[ed] that the ALJ considered the testimony."  *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir. 1996).  Here, ALJ Nail heard the sister's testimony, but his decision fails to discuss it.

Not all circuits adopt the Ninth Circuit position that appears to be a *per se* rule of reversal. *See e.g, Archer v. Apfel,* 66 Fed.Appx. 121, 122 (9th Cir. 2003).  A very recent Eighth Circuit decision is more in accord with the Tenth Circuit's decisions in *Leeper* and *Adams,* and I

therefore find it more persuasive.  That decision holds if an ALJ discredits the claimant's

testimony and the same reasons exist to reject a relative's testimony, then an ALJ does not err in

failing to discuss the relative's testimony.[4]   The reasoning is equally applicable here.  Plaintiff's

testimony and his sister's testimony made the same point –  Plaintiff is bedridden with pain.  Her

testimony does nothing to bolster his credibility in light of her evident bias and the medical

evidence of exaggeration.  *See Record* at 57-61.  While the better practice would have been to

discuss the testimony of all witnesses, ALJ Nail's failure to discuss the testimony of Plaintiff's

sister is not grounds for remand.

**B.  *Asserted Mental Limitations & Reliance On Grids***

Plaintiff maintains that the ALJ erred in discounting vocational expert Williams' finding of

depression, failing to provide a consultative examination and, consequently, in relying on the

exclusively on the grids to find Plaintiff not disabled.  *See  Doc. 12* at 10-15, 18-20.  Mr. Williams

holds an "LPCC," which in New Mexico is a "Licensed Professional Clinical Mental Health

Counselor."  *See Record* at 158; *see also* NM ADC 8.310.4.  ALJ Nail rejected Mr. Williams'

depression "diagnosis" because

---

[4]         The ALJ gave multiple valid reasons for finding Ms. Mearing's alleged
limitations not entirely credible, *see Hogan v. Apfel,* 239 F.3d 958, 962
(8th Cir. 2001) (deference to ALJ is appropriate when he explicitly
discredits claimant and gives good reasons for doing so), and although he
did not specifically address the credibility of Ms. Mearing's mother, the
reasons the ALJ gave for discrediting Ms. Mearing would have served as
bases for discrediting her mother, *see Young v. Apfel,* 221 F.3d 1065,
1068 (8th Cir. 2000) (ALJ's failure to give specific reasons for
disregarding testimony of claimant's husband was inconsequential, as
same reasons ALJ gave to discredit claimant could serve as basis for
discrediting husband).

*Mearing v. Barnhart,* 2004 WL 260761 at *1 (8th Cir. 2004) (unpublished).

> Mr. Williams is an authority on **vocational** matters.  He has experience as a mental health counselor, but **is not a trained psychiatrist.**  I do not accept his opinion that Mr. Moraga may be depressed as evidence of a medically determinable impairment.  Mr. Moraga has no cognitive limitations that would preclude his ability to perform unskilled work.

*Record* at 18 (emphasis added).

Social Security Regulations require "evidence from acceptable sources to **establish** whether you have a medically determinable impairment."  20 C.F.R. § 404.1513(a) (emphasis added).  Plaintiff correctly observes that licensed and certified psychologists qualify as "acceptable medical sources" for establishing an impairment.  *See id.*, § 404.1513 (a)(2).   However, Mr. Williams does not fall into this category even with his state LLPC license.  *See Detrick v. Barnhart*, CIV 02-0662 LCS (Memorandum Opinion and Order July 18, 2003) (an LPCC "is not an acceptable medical source" under identical provision,20 C.F.R. § 416.913).  As such, Mr. William's finding at most falls within the ambit of evidence from "other sources," which could only be considered to determine the **severity** of depression, provided that impairment was otherwise established by medical sources.  *See* 20 C.F.R. § 404.1513(d) (emphasis added).

The only evidence in the medical record before ALJ Nail that could be used to establish depression as an impairment was a single notation that Moraga was "depressed re: chronic pain." That same medical evidence shows that Plaintiff attributes his depression to chronic pain and the medical evidence indicates that pain is exaggerated.  As discussed above, moreover, no medical record indicated that any such depression was severe enough to be disabling.  Therefore, on the basis of the record before him, ALJ Nail did not err in rejecting Mr. Williams' conclusion as medical evidence that Plaintiff suffers the impairment of depression.

14

Given the single notation of depression in a medical record and counsel's repeated requests for an examination by a consulting psychiatrist, the issue is whether the Administration should have ordered a consultative examination.[5]  Again, based solely on the medical record before ALJ Nail, arguably there was no error in failing to order the consultation, because the one notation and "diagnosis" by Mr. Williams was not sufficient to sustain Plaintiff's burden of demonstrating a severe impairment.[6]

However, the record before me contains additional evidence.  The Appeals Council considered Dr. Baca's post-hearing submission reporting "marked" limitations due to Plaintiff's depression.  Generally, new evidence becomes part of the administrative record to be considered

---

[5]  Plaintiff's attorney diligently sought to bring the alleged mental impairment to the attention of the Administration.  After the initial unfavorable determination on November 17, 2000, counsel's reconsideration request specifically asked that Plaintiff be evaluated by a consulting psychiatrist because Plaintiff said that he had "been experiencing depression due to the chronic pain."  *Id.* at 63, 110; *see also Doc. 12,* Exh. A. The decision on reconsideration was also unfavorable.  Although the Administration received Mr. Williams' report in late October, neither the initial or reconsideration decisions mention his findings.  *See Record* at 63-73, 155.  Counsel again requested a consultative examination for mental impairments in a cover letter accompanying his request for hearing and in letters addressed to ALJ Nail immediately prior to the hearing, and just before the decision was issued.  *See Doc. 12,* Exh. A (letters attached to Plaintiff's Memorandum because they are absent from the official record).  Nothing in the record at the initial, reconsideration, hearing, or appeal stages indicates why the request for a consulting psychiatrist was denied.

[6]  *E.g, Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment"); *Fields v. Barnhart*, 83 Fed. Appx. 993, 996 (10th Cir. 2003) ("Only when a claimant has satisfied her burden of providing evidence suggestive of a severe impairment does it become the ALJ's responsibility 'to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment'" quoting *Hawkins*); 42 U.S.C. § 412(h) (if there is "evidence which indicates the existence of a mental impairment," disability determination "shall be made only if the Commissioner . . . has made every reasonable effort ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.").

when evaluating the Secretary's decision for substantial evidence.  *O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir. 1994).  Dr. Baca's findings cast the prior evidence in a new light, providing objective evidence suggesting depression, making Mr. Williams' findings pertinent, or, at best, rendering the record on depression incomplete and inconclusive.  This evidence coupled with counsel's repeated requests for a consultative examination, ALJ Nail should order a consultative examination to ascertain whether, and to what extent, any depression limited Plaintiff's ability to work or the range of jobs available.  *C.f., Fields v. Barnhart*, 83 Fed. Appx. 993, 996 (10th Cir. 2003) ("An ALJ is entitled to rely on counsel 'to identify the issue or issues requiring further development'" quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)).

Accordingly, until the issue of the nonexertional mental impairment is resolved, resort to the grids is improper.  *See, e.g., Talbot v. Heckler,* 814 F.2d 1456, 1460 (10th Cir. 1987); *Channel v. Heckler,* 747 F.2d 577, 580-81 (10th Cir. 1984); *see also Aragon v. Apfel,* 1998 WL 889400 at **3-4 (10th Cir. 1998) (reversing decision in case from this district; ALJ cannot ignore evidence of nonexertional impairment and rely on grids to find nondisability).  Thus, remand is required for further proceedings regarding the assertions of depression.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 11)* is granted in part and the matter is remanded to the Commissioner for further proceedings concerning Plaintiff's alleged mental impairment.  A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.

16